IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ERIC KAMAHELE, KEPA MAUMAU, and SITAMIPA TOKI,<br><br>Petitioners,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | AMENDED[1] ORDER AND<br>MEMORANDUM DECISION<br>RE: CERTIFICATE OF APPEALABILITY<br><br>Civil Case Nos.   2:15-cv-506-TC<br>                           2:15-cv-600-TC<br>                           2:16-cv-730-TC<br><br>(Criminal Case No.  2:08-cr-758-TC) |

In 2015 and 2016, Petitioners Eric Kamahele, Kepa Maumau, and Sitamipa Toki filed Motions for Relief Under 28 U.S.C. § 2255 (collectively, Petitions).[2] In 2017, the court denied the § 2255 Motions ("§ 2255 Order").[3] Because the Petitioners wish to appeal that decision, they have moved for a Certificate of Appealability (COA), which is required by 28 U.S.C. § 2253(c)

---

[1]This order amends and supersedes the court's April 3, 2018 Order & Memorandum Decision Re: Certificate of Appealability (docketed as ECF No. 60 in 2:15-cv-506, ECF No. 56 in 2:15-cv-600, and ECF No. 50 in 2:16-cv-730).

[2]See ECF Nos. 1 & 10 in 2:15-cv-506-TC (Kamahele § 2255 Petition); ECF Nos. 1 & 10 in 2:15-cv-600-TC (Maumau § 2255 Petition); ECF No. 1 in 2:16-cv-730-TC (Toki § 2255 Petition).

[3]Although the Petitioners filed individual habeas cases, the court's § 2255 Order was consolidated for all three petitions, and that order was docketed in each case. (See ECF No. 40 in 2:15-cv-506-TC (Kamahele); ECF No. 36 in 2:15-cv-600-TC (Maumau); ECF No. 27 in 2:16-cv-730-TC (Toki).)

before proceeding to the Tenth Circuit Court of Appeals.[4]

For the reasons set forth below, the court (1) DENIES Mr. Maumau's and Mr. Toki's request for a COA; (2) DENIES Mr. Kamahele's request for a COA on two of the three asserted bases for relief (referred to below as his Johnson and "actual innocence" claims) but GRANTS his request for a COA on Claims One and Two concerning withdrawal of his guilty plea.

### I. LEGAL STANDARD

When a court denies a § 2255 petition, the petitioner does not have an automatic right to appeal that decision. Instead, the petitioner must obtain a certificate of appealability from either the district court or the court of appeals. 28 U.S.C. § 2253(c)(1)(B).

To obtain a COA, the petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When reviewing a COA motion, the court does not fully consider "'the factual or legal bases adduced in support of the claims.'" Buck v. Davis, 137 S. Ct. 759, 773 (2017) (quoting Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)). Rather, the court conducts a "'threshold inquiry into the underlying merit'" of those claims. Id. at 774 (quoting Miller-El, 537 U.S. at 327)).

The court should issue a COA only if "'jurists of reason could disagree with the district court's resolution'" of the claims raised in the § 2255 petition or "'could conclude the issues presented are adequate to deserve encouragement to proceed further.'" United States v. Springer,

---

[4]The Petitioners filed a consolidated motion for a COA (COA Motion), which was docketed in each case. (See ECF No. 51 in 2:15-cv-506-TC (Kamahele); ECF No. 47 in 2:15-cv-600-TC (Maumau); ECF No. 39 in 2:16-cv-730-TC (Toki).)

875 F.3d 968, 972 (10th Cir. 2017) (quoting Buck, 137 S. Ct. at 773). If "reasonable jurists would not find the district court's decision on these issues debatable or wrong," the court should deny the COA motion. Jones v. Warrior, 805 F.3d 1213, 1222 (10th Cir. 2015).

When the court denies a § 2255 petition on procedural grounds (for example, finding that a claim is time-barred), the petitioner has an additional hurdle. He can obtain a COA only if he shows that both the procedural issue and the underlying claim are reasonably debatable. Springer, 857 F.3d at 981.

## II. PROCEDURAL BACKGROUND

In 2011, after a jury trial, the Petitioners were found guilty of several offenses, including racketeering in violation of RICO, Hobbs Act robberies (18 U.S.C. § 1951), committing violent crimes in aid of racketeering (VICAR, 18 U.S.C. § 1959), and using a firearm in furtherance of those crimes (18 U.S.C. § 924(c)). The convictions were based in part on finding each Petitioner guilty of underlying crimes of violence or, stated another way, predicate acts.

In 2014, they lost their direct appeal to the Tenth Circuit. See United States v. Kamahele, 478 F.3d 984 (10th Cir. 2014).

In 2015, Mr. Kamahele and Mr. Maumau filed pro se § 2255 petitions, which were amended, with assistance of appointed counsel, in 2016. (See Kamahele § 2255 Petition, as amended, ECF No. 1 ("Initial § 2255 Petition") & ECF No. 10 ("Amended § 2255 Petition") in 2:15-cv-506-TC; Maumau § 2255 Petition, as amended, ECF No. 1 ("Initial § 2255 Petition") & ECF No. 10 ("Amended § 2255 Petition") in 2:15-cv-600-TC.) Mr. Toki filed his petition in 2016 (he too was represented by appointed counsel). (See Toki § 2255 Petition, ECF No. 1 in 2:16-cv-730-TC.)

In their § 2255 Petitions, they asserted claims arising out of three distinct areas of law. First, Mr. Kamahele and Mr. Maumau raised ineffective-assistance-of-counsel claims (the "IAC claims"). Second, all three Petitioners challenged their convictions based on the newly recognized right announced by the United States Supreme Court in Johnson v. United States, 135 S. Ct. 2551 (2015) (the Johnson claims). Finally, they asserted legal innocence of the charges in the Second Superseding Indictment[5] (the "actual innocence" claims).

The court, in its § 2255 Order, rejected the IAC claims on their merits, denied the Johnson claims as time-barred, and denied the actual innocence claims on the ground that the Petitioners were not entitled to relief under that narrow doctrine. Now the court denies their Motion for a COA with the exception of Mr. Kamahele's IAC claims, for which the court issues a COA.

### III. PETITIONERS' *JOHNSON* AND ACTUAL INNOCENCE CLAIMS

In the § 2255 Order, the court held that the Johnson claims (and, by association, the actual-innocence claims based on Johnson) were procedurally barred—i.e., they were filed after the statute of limitations expired.

Claims filed under § 2255 are subject to a one-year statute of limitations. 28 U.S.C. § 2255(f). That one-year period begins to run from the latest of four dates, two of which are relevant here: "the date on which the judgment of conviction becomes final," or "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral

---

[5]ECF No. 114 in 2:08-cr-758-TC.

review." Id. § 2255(f)(1), (3). The Petitioners assert that this court's statute-of-limitations ruling was incorrect, and, for purpose of their COA Motion, that the ruling is at least reasonably debatable. The court disagrees for the reasons set forth below.

**A.  THE JOHNSON CLAIMS**

Although the Petitioners filed their Johnson claims more than one year after their convictions became final, they did file the claims within one year of the date the United States Supreme Court issued its 2015 decision in Johnson. Accordingly, they relied on the "newly recognized" and "retroactively applicable" rule announced in that decision to argue that their Johnson claims are not procedurally defaulted. But the court, in its § 2255 Order, held that they were not asserting the right recognized in Johnson and so those claims were procedurally defaulted. For the reasons set forth below, the Petitioners have not met their burden to show that reasonable jurists would find that decision wrong, particularly in light of recent Tenth Circuit precedent.

In Johnson, the Supreme Court held that the language of the "residual clause" in the Armed Career Criminal Act (ACCA) is unconstitutionally vague. Johnson, 135 S. Ct. at 2557. Although the Petitioners' convictions did not involve application of the ACCA, they contended that the Johnson ruling extends to the other statutes under which they were convicted because those statutes contain language that is almost identical to the unconstitutional language in the ACCA.

The issue addressed by the court in its order denying the § 2255 Motions was "whether Petitioners assert[ed] the same right announced in Johnson, or whether they instead assert a new right that the Supreme Court has yet to recognize." (§ 2255 Order at 37.) There the court held

5

that the Petitioners were asserting a different right. "Johnson limits itself to the ACCA. . . . And because Johnson does not dictate the right Petitioners assert [under statutes other than the ACCA], they cannot avail themselves of § 2255(f)(3), making their Johnson-based challenges time-barred." (Id. at 37–38; see also id. at 34 (quoting § 2253(f), under which the one-year statute of limitations, in relevant circumstances, "begins to run from the 'date on which the right asserted was initially recognized by the Supreme Court.'").)

In their COA Motion, Petitioners assert that "reasonable jurists" could find the court's ruling on this issue debatable or wrong. But their argument is foreclosed by the recent Tenth Circuit decision in United States v. Greer, 881 F.3d 1241 (10th Cir. 2018).

In Greer, a § 2255 petitioner unsuccessfully attempted to apply Johnson to an identically-worded clause in a mandatory sentencing guideline under which his sentence was enhanced. Because the ACCA also enhances sentences, Mr. Greer argued that Johnson naturally extended to the language in the sentencing guideline. The issue in Greer was whether the petitioner was asserting the same right newly recognized by the Supreme Court in Johnson (an issue essentially the same as that addressed by this court in the § 2255 Order). The Tenth Circuit held that Mr. Greer was not asserting the same right because he "was not sentenced under the ACCA." Id. at 1247. In other words, he was not asserting a "true Johnson claim." Id. at 1248. Significantly, the Tenth Circuit said that "the only right recognized by the Supreme Court in Johnson was a defendant's right not to have his sentence increased under the residual clause of the ACCA." Id. (emphasis added)

As in Greer, the Petitioners here are not asserting a "true Johnson claim" (i.e., they are not asserting a right to be free from the ACCA's sentence enhancement provision). Accordingly,

6

they may not tie their claims to the date Johnson was issued. Given the clear language in Greer and the undisputed fact that the claims would be time-barred if not tied to the trigger dates in § 2255(f)(3) and Johnson, reasonable jurists would not debate the conclusion that the Petitioners' Johnson claims are time-barred under § 2255(f)(3). For that reason, the court denies their request for a certificate of appealability on those claims.

## B. "ACTUAL INNOCENCE" CLAIMS

The Petitioners also relied on an alternative avenue of relief called "actual innocence." The court referred to their alternative requests for relief as "actual innocence" claims. In those claims, they did not ask for relief from a procedural bar, which is the well-settled use of the "actual innocence" exception. Instead, they asserted that they are actually innocent of their convictions because their underlying crimes do not qualify as crimes of violence under the law and facts in place at the time they were convicted. In essence, they seek a reversal of their conviction without further habeas proceedings.

Case law defining the scope of the "actual innocence" exception does not allow such relief. It is axiomatic that an actual-innocence claim is not a freestanding claim for relief but rather is a gateway allowing a petitioner to bypass a procedural bar to argue the merits of a habeas claim. The Supreme Court has not held otherwise. See McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."); Herrera v. Collins, 506 U.S. 390, 404–05 (1993) ("[O]ur habeas jurisprudence makes clear that a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."), cited in McQuiggin, 569

7

U.S. at 392.  Without authority to the contrary, the question is not reasonably debatable.

Also, as noted in the court's § 2255 Order, production of new exculpatory evidence is a prerequisite to applicability of the actual innocence exception.  (See § 2255 Order at 44–45.) Following Bousley v. United States, 523 U.S. 614 (1998), the court wrote that "Petitioners['] arguments are of 'legal insufficiency,' not 'factual innocence,' and they do not merit the actual-innocence exception."  (Id. at 43 (quoting Bousley, 523 U.S. at 623 ("'[A]ctual innocence' means factual innocence, not mere legal insufficiency."))).  The Petitioners did not present new exculpatory evidence.  But they contend that they need not present new exculpatory evidence to obtain relief under the actual innocence exception.

In response to Petitioners' authority that new evidence is not always necessary, the court distinguished those cases because "changes occurred in the relevant underlying law after the petitioners [in those cases] appealed."  (Id. at 46.)  Seizing on that distinction, Petitioners now take their argument one step further by characterizing the actual-innocence standard as one that does not necessarily require new exculpatory evidence or a change in the law.  But by doing so, they essentially argue that even though they could have obtained the same relief on direct appeal, they should be allowed to raise the argument now regardless of the usual procedural bars.  That is not the law.  An actual-innocence claim should "not be allowed to do service for an appeal." Bousley, 523 U.S. at 621.

Perhaps recognizing the difficulty of their position, the Petitioners assert that, "[g]iven the significance of this issue and the nature of the court's ruling, Petitioners should be allowed to let the court of appeals decide whether this distinction has merit."  (Reply in Supp. of Mot.

8

Certificate of Appealability (COA Reply)[6] at 5.) They articulate the issue, the "central question," as

> whether factual innocence under Bousley, Philips, and Adams [the cases distinguished by the court in its § 2255 Order] requires a change in the law in order to toll the statute of limitations under McQuiggin v. Perkins[, 133 S. Ct. 1924 (2013)]. <u>Given the absence of controlling law on this question, or any authority that speaks directly to this issue, the court should grant COA on this issue to let the Court of Appeals decide</u> whether the innocence required to toll the statute of limitations requires a change in the law.

(Id. (emphasis added).) Absence of law does not necessarily result in a reasonably debatable issue. Petitioners ask this court to allow a post-conviction appeal of an issue that could have been raised on direct appeal. It is well settled that a claim that could have been raised on direct appeal is barred under § 2255 and the "actual innocence" exception. Hale v. Fox, 829 F.3d 1162, 1171 (10th Cir. 2016). The Petitioners' circuitous argument asks this court to ignore the settled law.

For these reasons, the court denies the request for a COA on the "actual innocence" claims.

## IV. CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

**A.     ERIC KAMAHELE**

Concerning Mr. Kamahele's motion for a COA on his first two IAC claims, the court finds that "'jurists of reason could disagree with the district court's resolution'" of Claims One and Two or, at a minimum, "'could conclude the issues presented are adequate to deserve encouragement to proceed further.'" United States v. Springer, 875 F.3d 968, 972 (10th Cir.

---

[6]The COA Reply is docketed in each Petitioner's case, as follows: ECF No. 54 in 2:15-cv-600 (Maumau); ECF No. 58 in 2:15-cv-506 (Kamahele); ECF No. 47 in 2:16-cv-730 (Toki).

2017) (quoting Buck, 137 S. Ct. at 773). Accordingly, the court grants his request for a COA as to Claims One and Two which were raised in Mr. Kamahele's Initial § 2255 Petition and incorporated by reference into his Amended § 2255 Petition.

**B.   KEPA MAUMAU**

**Claim One – Investigation of the Gen X Robbery and the Photo Array**

At trial, the jury found that Mr. Maumau committed the August 12, 2008 armed robbery of the Gen X clothing store (one of the elements and predicate acts underlying his convictions). Part of the Government's evidence consisted of a photo array, from which two eyewitnesses had identified Mr. Maumau as one of the men who robbed the store.

Before trial, Mr. Maumau's trial attorney moved to suppress the photo array, arguing that it was unduly suggestive and unreliable. She introduced expert testimony challenging the reliability of photo identifications. Ultimately, the court denied the motion to suppress, finding that the photo array was not unduly suggestive.[7]

---

[7]Significantly, the Tenth Circuit, on direct appeal, held that the photo array was not unduly suggestive and that, even if it was, the witness identifications were reliable.

> Though the employees [of Gen X] had only about a minute to observe the robbers, they were within eight feet. The employees were not only close, but also able to describe the robber with the gun as a Native American man in his early twenties with no scars, tattoos, or marks, with a medium build and approximately five-feet, ten-inches tall. And the employees viewed the array separately only about three months after the robbery. Finally, two of the employees testified that they had recognized Mr. Maumau as someone who had recognized Mr. Maumau as someone who had previously visited the store.

United States v. Kamahele, 478 F.3d 984, 1021 (10th Cir. 2014) (internal citation omitted). Here, the United States asserts that Mr. Maumau's Claim One is a thinly-disguised, and procedurally improper, challenge to the court's suppression ruling. (See U.S. Response Opp'n to Maumau § 2255 Petition at 4–5, ECF No. 5.) Because Mr. Maumau filed Claim One while

10

In Claim One of his Petition, Mr. Maumau acknowledges that his attorney did challenge the photo array, but he says she did not do enough to convince the court to suppress it. Specifically, he challenged his attorney's failure to interview the eyewitnesses. According to Mr. Maumau, an interview would have addressed his concerns that the witnesses may have been confused, unreasonably influenced, or afraid to say they did not recognize any of the individuals in the photo array. (See Maumau Initial § 2255 Petition at 3–4.) That, he asserts, could have garnered information that could have convinced the court to grant the motion to suppress. In his Petition, he wrote that it is "reasonable to believe that the outcome of the proceeding [presumably the suppression hearing, or perhaps the trial] would have been different" if she had done so. (Id. at 6–7.) Then, taking it a step further, Mr. Maumau, without analysis, leapt to the conclusion that there was a reasonable probability that, in the absence of the photo array, the jury likely would have had reasonable doubt that he was guilty of the Gen X robbery.

In its § 2255 Order, the court held that Mr. Maumau was not prejudiced by any failure to investigate. As a basis for that ruling, the court noted that (1) the Gen X robbery was only one of nine predicate acts underlying the RICO charge, (2) the Government was only required to prove two of those acts, and (3) the jury had found Mr. Maumau guilty of at least two other predicate acts.

Mr. Maumau points out in his COA Motion that the Gen X robbery was also the basis for his convictions under § 924(c), VICAR, and the Hobbs Act. But that does not change the court's earlier conclusion that Mr. Maumau was not prejudiced by his attorney's decision not to

---

acting pro se, the court liberally construes Claim One as an IAC claim.

interview the witnesses and its conclusion now that no reasonable jurist would debate the issue. With or without the photo array, the evidence that Mr. Maumau committed the robbery was overwhelming.

First, the two eyewitnesses testified at trial. Each noted that during the robbery, Mr. Maumau's face was uncovered for part of the time and they recognized him based on his earlier visits to the store. (See Sept. 13, 2011 Trial Tr. at pp. 19, 24, 29–30, 39–41, 43–44, 46, 48–49, ECF No. 1346 of 2:08-cr-758-TC.) Their testimony was corroborated by a surveillance video which they viewed while testifying on the stand.

Mr. Maumau's accomplice, Edward Kamoto, also testified. He identified Mr. Maumau as his accomplice in the Gen X robbery and described specifics of the robbery, including the fact that Mr. Maumau brandished a gun during the robbery. His description was corroborated by the video and the eyewitnesses' testimony. He also identified Mr. Maumau as a member of TCG, noted Mr. Maumau's gang moniker, and said that he committed the crime in furtherance of TCG.[8] (See id. at pp. 77–78, 81, 87, 90–92, 95–96.)

No reasonable jurist, in light of the strong evidence of Mr. Maumau's participation in the

---

[8]In his initial Petition, Mr. Maumau addressed Mr. Kamoto's trial testimony and incorporated a recent affidavit of Mr. Kamoto, in which Mr. Kamoto says he committed the Gen X robbery for his own personal financial gain, not to further his position in TCG. (See Ex. 1 attached to Maumau's Initial § 2255 Petition.) Characterizing the affidavit as a recantation of earlier testimony, Mr. Maumau said that the affidavit merited, at a minimum, an evidentiary hearing to examine Mr. Kamoto. The court disagrees. Even taking that statement as true, Mr. Kamoto's affidavit does not undermine his earlier testimony that Mr. Maumau committed the robbery as Mr. Kamoto's accomplice, and that both Mr. Kamoto and Mr. Maumau were members of TCG. It also does not change the compelling testimony of Officer Break Merino, from which a jury could conclude that the underlying crimes at issue—including the Gen X robbery—were committed in furtherance of the enterprise TCG.

Gen X robbery, would debate the court's conclusion that counsel's decision to forego pre-trial witness interviews did not prejudice him under the Strickland[9] standard. Accordingly, the court denies his COA Motion on Claim One.

### Claims Two, Seven, and Ten – Expert Witness Break Merino

In Claims Two, Seven, and Ten, Mr. Maumau criticized his attorney's handling of the Government's expert witness on TCG, Officer Break Merino, both before and during trial. In Claim Two, he alleged that his counsel did not reasonably challenge the admissibility of Officer Merino's testimony. In Claim Ten, he asserted that Officer Merino's testimony at trial exceeded the scope of his expertise and that his counsel failed to object to the expert testimony on that basis. Claim Seven essentially repeated the points made in Claims Two and Ten.

The court, in its § 2255 Order, noted that Mr. Maumau's attorney did file a motion to exclude Officer Merino's expert testimony and did cross-examine Officer Merino at trial. The court further noted that even if Mr. Maumau could establish an objectively unreasonable performance by his attorney, he did not establish that he would have been prejudiced by any alleged errors.

In his COA Motion, Mr. Maumau concedes "that counsel sought to exclude [Officer Merino's] testimony," but he fine tunes his initial claim by asserting that "a reasonable jurist could conclude that counsel unreasonably failed to identify with specificity the hearsay statements Mr. Merino was parroting back to the court."[10] (COA Motion at 11 (emphasis

---

[9] See Strickland v. Washington, 466 U.S. 668, 687–93 (1984).

[10] On direct appeal, the Tenth Circuit found that Officer Merino did not parrot statements. Defendants Kepa Maumau, Daniel Maumau, and Sitamipa Toki also

13

added).) For example, Mr. Maumau identified specific portions of Officer Merino's testimony that were "based on hearsay attributed to former gang members, including a portion where Mr. Merino clarifies that his testimony is based 'more specifically on one gang member, his name is Miles Kinikini.'" (Id. (quoting Maumau Initial § 2255 Petition at 11).)

Mr. Maumau then asserts that "a reasonable jurist could conclude there is a reasonable probability that the outcome of the trial would have been different had the court excluded all or some of Mr. Merino's testimony." (Id.) In the abstract, that statement has a ring of truth. But to

---

> invoke the Confrontation Clause, arguing that Officer Merino based his testimony on interviews with cooperating witnesses and other gang members. We disagree. Introduction of expert testimony violates the Confrontation Clause only when the expert is simply parroting a testimonial fact. That did not occur here.

Kamahele, 478 F.3d at 999–1000 (internal footnote omitted). Arguably, that portion of Claims Two, Seven, and Ten of Mr. Maumau's § 2255 Petition should not be considered because the issue was addressed, and rejected, by the Tenth Circuit in 2014. But, based on what the court can glean from Mr. Maumau's initial (pro se) § 2255 Petition and his COA Motion, his argument is related to the following statement in the Tenth Circuit's Kamahele opinion:

> Mr. Daniel Maumau, Mr. Kepa Maumau, and Mr. Toki generally describe Officer Merino's testimony, <u>but they do not identify the parts that involved the recitation of testimonial hearsay</u>. See Daniel Maumau's Opening Br. at 49–50 (stating, without any supporting citation, that "Merino simply parroted information" received from others); Kepa Maumau's Opening Br. at 37 (claiming, without any supporting citation, that "the District Court allowed Officer Merino merely to parrot the statements of his[ ] alleged sources, with no opportunity for cross-examination, rather than conveying independent judgment"); Toki's Opening Br. at 39–40 (citing passages in Officer Merino's testimony as inflammatory, but failing to identify the parts that violated the Confrontation Clause). <u>Without such guidance, we are hard-pressed to find testimony by Officer Merino that simply parroted a testimonial fact learned from a particular interview</u>.

Id. at 1000 (emphasis added). For purposes of this order, the court will give Mr. Maumau, who asserted the "specificity" argument in his pro se petition, the benefit of the doubt.

rely on that conclusion, Mr. Maumau must first establish that reasonable jurists would debate the conclusion that his counsel's failure to identify the specific statements likely would have resulted in exclusion of Officer Merino's expert witness testimony. That he has not done.

The court finds it highly unlikely that a further parsing of Mr. Merino's testimony at the <u>Daubert</u> hearings and in arguments about confrontation clause issues would have made a material difference before trial or on direct appeal. And Mr. Maumau does not explain why he believes reasonable jurists could conclude that a more specific identification of those statements would have resulted in exclusion of Officer Merino as an expert witness. Accordingly, he is not entitled to a COA on Claims Two, Seven, or Ten.

### **Claims Three Through Five – Investigating the Conspiracy and Challenging the Testimony of Edward Kamoto**

In these claims, Mr. Maumau contended that his attorney unreasonably refused or failed to (1) investigate whether a conspiracy existed, (2) interview his Co-Defendants, (3) interview accomplice Edward Kamoto, and (4) effectively cross-examine Mr. Kamoto at trial. This failure, he submitted, necessarily harmed his ability to show the jury that he was not involved in a conspiracy and did not commit the crimes in furtherance of TCG (i.e., that he did not have a racketeering motive).

According to his COA Motion, he no longer argues that his counsel should have interviewed his Co-Defendants. But he maintains his claim that (1) his attorney should have interviewed Mr. Kamoto (which, he asserts, would have revealed exculpatory evidence); (2) she did not effectively cross-examine Mr. Kamoto (in part because she did not have those exculpatory statements from Mr. Kamoto, which she would have gathered had she talked to him

before trial); and (3) new evidence (i.e., Mr. Kamoto's affidavit, attached as Ex. 1 to Maumau's Initial § 2255 Petition) now casts doubt on his motive for committing the robberies.

Mr. Maumau has not established that reasonable jurists could debate whether he was prejudiced by his attorney's allegedly insufficient investigation and cross-examination of Mr. Kamoto. The court re-emphasizes that, regardless of whether his counsel specifically questioned Mr. Kamoto on cross-examination about the purpose for committing the robberies, other counsel asked such questions during their cross-examinations of Mr. Kamoto. Indeed, Mr. Maumau stated in his Petition that "[c]ounsel for other defendants elicited favorable information." (Maumau Initial § 2255 Petition at 26.) He gave examples of those questions (see id. at 22–25) and noted that Co-Defendant Eric Kamahele's attorney asked questions that "pointed to the heart of the matter: were the robberies in furtherance of or in relation to TCG." (Id. at 24.) That the questions and answers may not have been elicited by Mr. Maumau's counsel is irrelevant because the point he identifies as crucial was presented to the jury. Accordingly, reasonable jurists could not debate the conclusion that even if Mr. Maumau's attorney did not ask those questions, he was not prejudiced.

As an alternative basis for his assertion that he is entitled to a COA, he focuses on his proffered evidence that (1) Mr. Kamoto, in a pretrial statement to law enforcement officers, admitted to the Gen X robbery but "stated that he had little or no information about TCG"[11]; and (2) Mr. Kamoto, in an affidavit attached to Mr. Maumau's Petition, recently recanted his trial testimony and said he did not commit the crimes with Mr. Maumau in order to increase his

---

[11](Maumau Initial § 2255 Petition at 18.)

16

standing in TCG. (COA Motion at 13 (citing Aff. of Edward Kamoto, attached as Ex. 1 to Maumau Petition).) In light of Mr. Kamoto's affidavit, Mr. Maumau contends, "reasonable jurists at this stage could debate whether the court's disposition of these claims was correct and conclude that there is a factual dispute that would entitle him to a hearing and the chance to examine Mr. Kamoto in light of the new affidavit." (COA Reply at 10.) But, as noted earlier in the court's discussion of Claim One, even taking Mr. Kamoto's sworn "recantation" as true, Mr. Kamoto cannot speak for Mr. Maumau, whose motive is the relevant one. Also, Officer Merino's damaging testimony supported the jury's conclusion that the Gen X robbery was committed in furtherance of a racketeering conspiracy.

For these reasons, the court denies his request for a COA on Claims Three through Five.

**Claim Six – College Receipts**

In this claim, Mr. Maumau asserted that his attorney should have used the "college receipts found in his car as evidence for motive or lack of intent defense" concerning the conspiracy. (Maumau Initial § 2255 Petition at 26.) The court, in its § 2255 Order, rejected this claim because it could not "see any relevant link between the college receipts, Mr. Maumau's motive and intent, and the purpose of the robberies, and Mr. Maumau [did] not elaborate." (§ 2255 Order at 29.) In his COA Motion, he now elaborates:

> [R]easonable jurists could debate whether there was, in fact, such a link. Specifically, a reasonable jurist could conclude that the receipts were evidence that Mr. Maumau committed the robberies not to advance his standing with TCG but to obtain money for college.

(COA Motion at 14.)

The court will not consider information that Mr. Maumau raises for the first time in his

motion for a certificate of appealability. But even if the court did, Mr. Maumau would not be entitled to a COA. Presenting the college receipts and the related defense theory to the jury would not have resulted in a different outcome for Mr. Maumau. Given the weight of evidence against him, no reasonable jurist would debate that conclusion.

**Claim Nine – Exit Plan**

In its § 2255 Order, the court rejected Mr. Maumau's ninth claim, in which he asserted that his counsel erred by presenting a document called the "Exit Plan" to the jury. The court noted that Mr. Maumau based his claim on an incorrect reading of the record, which shows that the Government, not Mr. Maumau, proffered the Exit Plan as evidence.

Now, in the COA Motion, counsel for Mr. Maumau attempts to correct Mr. Maumau's error by suggesting that the court should construe Mr. Maumau's pro se petition liberally and view the claim "as a challenge to the admission of the exit plan." (Id. (emphasis added).) Mr. Maumau then asserts that his attorney's "failure" to "keep the document out" prejudiced him. (Id. at 14–15.)

No liberal construction of the Petition would lead the court to the point he now raises. Mr. Maumau presents an entirely new argument that the court need not address here.

In any event, as the United States pointed out in its original opposition to Mr. Maumau's Initial § 2255 Petition, the admissibility of the Exit Plan was litigated extensively before and during trial. (See U.S. Opp'n to Maumau Initial § 2255 Petition at 13, ECF No. 5.) Indeed, Mr. Maumau's counsel objected to admission of the Exit Plan on a number of bases, including Federal Rule of Evidence 403 (asserting that the probative value of the Exit Plan was outweighed by the prejudice it presented). (See, e.g., Sept. 12, 2011 Trial Tr. at 207–08, ECF No. 1414.)

For all of these reasons, Mr. Maumau is not entitled to a COA on Claim Nine.

**Claim Eleven – Cumulative Effect**

Because the court holds that Mr. Maumau is not entitled to a COA on any of his individual claims, it necessarily follows that he has not met his burden to obtain a COA on his cumulative effect claim.

**ORDER**

For the foregoing reasons, the court ORDERS as follows:

1. Petitioner Kepa Maumau's Motion for Certificate of Appealability (ECF No. 47 in 2:15-cv-600-TC) is DENIED.

2. Petitioner Sitamipa Toki's Motion for Certificate of Appealability (ECF No. 39 in 2:16-cv-730-TC) is DENIED.

3. Petitioner Eric Kamahele's Motion for Certificate of Appealability (ECF No. 51 in 2:15-cv-506-TC) is DENIED as to his Johnson and actual innocence claims, and GRANTED as to Claims One and Two. The court hereby strikes the evidentiary hearing scheduled for May 16, 2018. (See Notice of Hearing on Motion, ECF No. 61 in Kamahele v. United States, 2:15-cv-506). The remaining motion pending in Mr. Kamahele's case (ECF No. 63) is DENIED AS MOOT.

SO ORDERED this 13th day of April, 2018.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge